Jason M. Drangel (JD 7204)
Robert L. Epstein (RE 8941)
William C. Wright (WW 2213)
EPSTEIN DRANGEL BAZERMAN & JAMES, LLP
60 East 42nd Street, Suite 820
New York, NY 10165
Tel.: (212) 292-5390
Fax: (212) 292-5391



*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
INFINITE MACHINES, LLC             :
                                   :
            Plaintiff,             :   Civ. No. 07 CIV 8625
                                   :
       v.                          :
                                   :
RADICA ENTERPRISES, LTD. d/b/a RADICA :
USA LTD. and RADICA GAMES LIMITED  :
            Defendants.            :
                                   :
------------------------------------------------------x

Judge Hellerstein

## COMPLAINT

Plaintiff, by its attorneys, for its Complaint against Radica Enterprises Ltd. d/b/a Radica USA Ltd. and Radica Games Limited, states as follows:

### JURISDICTION AND VENUE

1. This is a civil action for breach of contract, misappropriation of property and unfair competition. This court has jurisdiction of such claims pursuant to 28 U.S.C. §§ 1332.

2. The acts and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of New York and within this district,

among other places. Venue is proper under 28 U.S.C. § 1391, in that Defendant conducts business in this judicial district and has committed many of the complained of acts in this judicial district.

## THE PARTIES

3. Plaintiff, Infinite Machines, LLC ("IM" or "Plaintiff"), is a limited liability company organized and existing under the laws of the state of California, with its principal place of business at 141 South Hudson Street, Suite101, Pasadena, CA 91101.

4. Defendant Radica Enterprises, Ltd. d/b/a Radica USA Ltd., is a corporation organized and existing under the laws of the state of Nevada with a principal place of business at 13628-A Beta Road, Dallas, TX 75244 ("Radica Enterprises").

5. Defendant Radica Games Ltd. ("Radica Games") is a company organized and existing under the laws of Bermuda, with its registered office at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda.

6. Upon information and belief, Radica Enterprises is a wholly-owned subsidiary of Radica Games. Radica Games, Radica Enterprises and their respective subsidiaries and related companies are hereinafter referred to as "Radica" or "Defendant."

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

7. Plaintiff, IM was established in 2000 by John C. Boucard, the president and founder of IM. IM creates, develops, and licenses electronics, toys, games and consumer products. IM also collaborates with other inventors in joint development

projects, represents other developers' products in royalty sharing arrangements and develops specific products at the request of third parties.

8. IM has originated various technology platforms, product concepts, primarily toys, games and general electronic products for its clients in both the United States and other countries. IM is well known and has a successful and valued reputation in the toy industry for delivering and creating innovative technical products on-time and within budget.

9. Radica is a leading developer, manufacturer and distributor of electronic handheld and table top games. In early September, 2005, Radica contacted IM to see if IM was interested in working on a toy concept Radica was considering internally.

10. Prior to disclosing the toy concept, Radica sent IM a mutual confidentiality agreement to execute. IM signed the agreement and returned it to Radica by facsimile.

11. After execution of the Agreement, Chris Wilson, president of Radica disclosed (in an e-mail dated September 9, 2005) to IM, a concept called Bitty Bites ("Bitty Bites") which he described as follows:

> "Check this out. Idea is pretty basic but the execution is cool. We are not sure the "how to" behind making the simple flash games just pop up on your screen when you plug in to USB and the web aspect needs to be completely figured out. Ideally, a person buys one of these gets A level of play. Buys 2 and gets more, etc. Then the web stuff gets built in (???) where they play for points to buy simple Chuckie Cheese type swag or earn big points for big prizes. That's about it.

12. Radica followed up this disclosure with an eight (8) page summary of the Bitty Bites concept. Bitty Bites was proposed as a USB stick in the form of a number of

standard shaped, animal and human collectible figurines that could be inserted in the USB port on a computer and activate games physically stored on the USB stick.

13. The concept proposed by Radica was not novel. In fact, at the time Radica identified a company called Mimoco selling a near exact product called Mimiobots. Radica was interested in bringing a product like Mimiobots to market but wanted to distinguish Bitty Bites, but was unsure how to do so.

14. After reviewing the Bitty Bites disclosure, IM indicated that it had experience working on similar products and had developed some proprietary technology and other ideas on product design that would distinguish Bitty Bites in the marketplace as well provide toy level price points. The technology IM revealed to Radica was called Footnotes ("Footnotes").

15. Footnotes is a technology platform that uses unique identifiers to associate digital information with physical objects. For example, Footnotes could be embedded into physical objects such as trading cards, wearable jewelry, photographs and even plush toys, and control and manipulate digital content being viewed on a television set, personal computer, DVD Player, or cell phone. IM filed a patent application for the Footnotes technology in July, 2005.

16. In addition to the patent pending Footnotes technology, IM had developed innovative hardware, software, and server solutions integrating Footnotes. One such product was called Power Patrol which IM had confidentially disclosed to a different executive at Radica months earlier. IM discussed this prior disclosure with Chris Wilson and supplied him with a September, 2005 article broadly discussing Footnotes as applied to Power Patrol.

17. Between September and November 2005, IM and Radica exchanged emails, had personal conversations and conference calls regarding Footnotes and its application to Bitty Bites.

18. IM prepared a ten (10) page proposal in early September applying Footnotes to the Bitty Bites concept. IM proposed an innovative USB gaming system that would combine custom hardware, custom software, gaming, the internet and collectibles.

19. In addition to Footnotes, IM proposed a novel USB base unit (master) that would receive the Bitty Bite figurine (slave) and activate stored or internet games. The idea was to plug in the base unit to a PC, pick a figurine and plug it into the base and start playing games. This master/slave design would not only provide Radica with a unique entry into the USB game market, but also allow for significant development and manufacturing cost savings to Radica's proposed single USB stick figurine with imbedded games.

20. At Radica's urging, in October, 2005, during the Toy Fair, IM met in New York with executives of Radica and presented details of its proposal in a 36 page PowerPoint presentation. During the October meeting, IM disclosed both a physical wired and wireless Footnote system showcasing an on screen demo of a unique identifier manipulating a digital GUI as well as games. The presentation continued for more than 2 hours and was followed by a comprehensive question and answer session.

21. Radica was extremely interested in the IM proposal. After the presentation, Radica requested (and received) an additional presentation at Radica's office to the president of Radica.

22. IM and Radica then discussed and exchanged draft option and license agreements on various occasions, but no mutually agreeable terms were ever agreed on and Radica discontinued further communications with IM regarding Bitty Bites by the end of 2005, early 2006.

23. Upon information and belief, in the fall of 2006, Radica became an indirect, wholly-owned subsidiary of Mattel Inc. ("Mattel")

24. In early 2007, IM observed a product introduced by Radica at a toy fair based on the Bitty Bites/Footnotes model disclosed by IM to Radica in 2005. The product was to be called UB Funkeys. UB Funkeys was proposed to be a collection of 40+ little urban vinyl collectible figures, each containing a code to unlock a new "zone" on a user's computer. Each figure had connectors in their feet that plugged into a USB enabled base that connected to a PC.

25. In February, 2007, IM expressed its concern to counsel for Radica regarding a potential infringement and violation of the confidentiality agreement. Discussions between IM and counsel were pursued but failed to progress and the matter remained unresolved.

26. In August, 2007, Radica released UB Funkeys. The UB Funkeys starter set includes a Funkey Port (Master). The Port has a USB cable that plugs right into a PC. The starter set also includes two UB Funkeys figurines (Slaves). There are 42 urban vinyl figures to collect. The Funkey figurine is inserted into the top of the Port and transmits data. Once the Funkeys are set up, their owner is able to go to www.ubfunkeys.com and enter Funkeys Town. There, each Funkey on the base will appear in avatar form on the screen, ready to play games. As the Funkey figures explore the town, they interact with

other Funkeys, unlocking and playing minigames along the way. There is also an incentive element, with players winning coins they can use to decorate their "crib," a personal area that can be adorned with furniture, wallpaper, electronics or pets.

27. Upon release, Robert Eckert, CEO of Mattel called UB Funkeys "the next generation of play." Chris Wilson of Radica indicated that UB Funkeys was "an evolution in the way kids play."

28. UB Funkeys was not independently developed by Radica. UB Funkeys incorporated, nearly all of the confidential and proprietary technology, information, designs and ideas disclosed to Radica by IM ("Confidential Information"). Radica was never licensed or authorized to use the Confidential Information disclosed by IM to Radica.

29. Pursuant to the terms of the Confidentiality Agreement, all information exchanged between the parties, arising out of the discussions between the parties shall remain the property of the disclosing party. Plaintiff is the owner of the Confidential Information relating to the novel design of the UB Funkeys disclosed to Radica and not otherwise in Radica's possession, custody or control, or otherwise in the public domain.

## DAMAGES COMMON TO ALL CLAIMS

30. As a result of Defendant's conduct, Plaintiff has lost revenues directly and indirectly, and otherwise sustained direct and consequential damages, including lost market position, in an amount not yet determined.

31. Unless enjoined by this Court, Defendant will continue its course of conduct. As a result of the acts alleged above, Plaintiff has already suffered irreparable

damage. Plaintiff has no adequate remedy at law to address all of the injuries that Defendant has caused and will continue to cause by its conduct.

## CLAIMS FOR RELIEF

### I. BREACH OF CONTRACT

32. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-31 of this Complaint as though fully set forth herein.

33. This is a claim by Plaintiff for breach of contract under the common law of New York.

34. The amount in controversy is greater than $75,000.

35. The Confidentiality Agreement require that Radica keep strictly confidential any information that it acquired during the course of discussions with the Plaintiff or any information obtained from reviewing Plaintiff's materials, documents, or the like.

36. Radica specifically agreed that the confidential information will not be used by Radica other than to evaluate the information for "purposes of determining whether or not to further a business relationship with the disclosing party."

37. By the acts above, Defendant has materially breached the Confidentiality Agreement, to the injury of Plaintiff.

### III. MISAPPROPRIATION OF PROPERTY

38. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-31 of this Complaint as though fully set forth herein.

39. This is a claim by Plaintiff for misappropriation of property under the common law of New York.

40. The amount in controversy is greater than $75,000.

41. By the acts above, Defendant has misappropriated Plaintiff's novel ideas, to the injury of Plaintiff.

## IV. UNFAIR COMPETITION

42. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-31 of this Complaint as though fully set forth herein.

43. This is a claim by Plaintiff for unfair competition under the common law of New York.

44. The amount in controversy is greater than $75,000.

45. By the acts above, Defendant has unlawfully appropriated Plaintiff's property, including, but not limited to, Plaintiff's proprietary and novel, technology, information, designs and ideas. Defendant has no privilege or justification to engage in the activity herein-above described and has unfairly competed with Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment:

1. Preliminarily and permanently enjoining Defendant, its parents, subsidiaries, affiliates and related entities, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

a)  misappropriating Plaintiff's property or competing unfairly with Plaintiff.

2. Requiring Defendant to account to Plaintiff for any and all profits derived by them and for all damages sustained by Plaintiff by reason of the acts complained of herein, that the damages and profits herein be trebled and that Defendant pay punitive damages to Plaintiff.

3. Requiring Defendant to pay to Plaintiff its costs and attorneys' fees along with prejudgment interest.

4. Requiring Defendant to make all reasonable efforts to retrieve all UB Funkeys sold, or otherwise distributed by them.

5. Requiring Defendant to deliver to Plaintiff for destruction, all products, product and packaging molds, all promotional materials, solicitations and all other documents in Defendant's possession or under its control which is subject to the injunctive order of this Court.

6. Requiring Defendant to place advertisements as directed by this Court, indicating that the goods sold by it in violation of Plaintiff's rights were not in any way connected with Plaintiff and that such goods are no longer being sold or marketed by them, and that Defendant will no longer manufacture, have manufactured or distribute such goods.

7. Ordering such other and further relief as this Court deems just and proper.

## Jury Demand

Plaintiff respectfully demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

                                                             **EPSTEIN DRANGEL**
                                                             **BAZERMAN & JAMES, LLP**

Dated: 10/4/07            By: _/s/_

                                                             Jason M. Drangel (JMD 7204)
                                                             Robert L. Epstein (RE 8941)
                                                             William C. Wright (WCW 2213)
                                                             Attorneys for Plaintiff
                                                             60 East 42nd Street
                                                             Suite 820
                                                             New York, NY 10165
                                                             Tel: 212-292-5390
                                                             Fax: 212-292-5391

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Judge Hellerstein

07 CIV 8625

Plaintiff  Infinite Machines

-v-

Radica Enterprises, etcl.

Case No.

Defendant

Rule 7.1 Statement

Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for _____Infinite Machines_____ (a private non-governmental party) certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held.

NONE.

RECEIVED
OCT 04 2007
U.S. ...S.D.N.Y.
CASHIERS

Date: 10/3/07

Signature of Attorney

Attorney Bar Code: 7204

Form Rule7_1.pdf