UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

INFINITE MACHINES, LLC,            )
                                   )
         Plaintiff,                )
                                   )
         v.                        )
                                   )   Civil Action No. 07-8625-AKH
RADICA ENTERPRISES LTD. d/b/a      )
RADICA USA LTD. and RADICA         )
GAMES LIMITED,                     )   **DOCUMENT FILED**
                                   )   **ELECTRONICALLY**
         Defendants.               )
_____)

_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE**
_____


|  |  |
|---|---|
|  | Charles A. Weiss |
|  | John R. Hutchins |
|  | KENYON & KENYON LLP |
|  | One Broadway |
|  | New York, NY 10004 |
| Of Counsel: | (212) 425-7200 |
|  |  |
| Hilda C. Galvan | Attorneys for Defendants |
| Mark C. Howland |  |
| JONES DAY |  |
| 2727 North Harwood Street |  |
| Dallas, TX  75201-1515 |  |
| (214) 220-3939 |  |

## TABLE OF CONTENTS

Page

I.   Factual Background ................................................................................................. 2

II.  Argument ................................................................................................................. 4

    A.  The Northern District of Texas Is a Proper Venue for this Action ........................ 4

    B.  The Relevant Factors Strongly Favor Transfer of this Action to the Northern District of Texas ........................................................................................ 5

        1.  The Northern District Is More Convenient for the Witnesses ................... 6

        2.  The Northern District Is More Convenient for the Parties ........................ 8

        3.  The Relevant Documents and Other Sources of Proof Are Located in the Northern District of Texas ............................................................... 9

        4.  The Locus of Operative Facts Is in the Northern District of Texas ......... 10

        5.  The Subpoena Power of this Court Would Be Useful in Texas Where a Non-Party Witness Is Located .................................................. 11

        6.  The Relative Means of the Parties, Two Corporate Entities, Has Little Impact on the Transfer Analysis .................................................... 12

        7.  Familiarity with the Law Has Little Impact on this Case ........................ 12

        8.  IM's Choice of the Southern District of New York Is Entitled to Little Weight ............................................................................................ 13

        9.  Judicial Economy and the Interests of Justice Weigh in Favor of Transfer .................................................................................................... 14

III. Conclusion ............................................................................................................. 14

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*1-800 Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y. 1994) ......12, 13

*Artemide SpA v. Grandlite Design & Manufacturing Co.*, 672 F. Supp. 698 (S.D.N.Y.
    1987) ..................................................................................................................................10

*Bassali v. Johnson Controls, Inc.*, No. 06-cv-4149-KMW, 2007 U.S. Dist. LEXIS 95143
    (S.D.N.Y. Dec. 20, 2007) ................................................................................................4, 13

*Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-cv-740-WHP, 1999 U.S. Dist. LEXIS 8031
    (S.D.N.Y. May 25, 1999)......................................................................................................12

*Canadian Kennel Club v. Continental Kennel Club,* No. 96-cv-6735 (LMM), 1997 U.S.
    Dist. LEXIS 9159 (S.D.N.Y. June 23, 1997)........................................................................8

*Coker v. Bank of America*, 984 F. Supp. 757 (S.D.N.Y. 1997) .....................................................13

*Coloplast A/S v. Amoena Corp.*, 25 U.S.P.Q.2d 1549 (S.D.N.Y. 1992) .......................................10

*Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir. 1998) .........................................................................12

*Frame v. Whole Foods Market, Inc.*, No. 06-cv-7058-DAB, 2007 U.S. Dist. LEXIS
    72720 (S.D.N.Y Sept. 24, 2007).........................................................................................4, 5

*Harrison v. Samuel*, No. 05-cv-8914-SAS, 2006 U.S. Dist. LEXIS 41856 (S.D.N.Y. June
    19, 2006) ..............................................................................................................................13

*Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, No. 05-cv-
    4741-DC, 2005 U.S. Dist. LEXIS 32841 (S.D.N.Y. Dec. 12, 2005)....................................7

*I Create International, Inc. v. Mattel, Inc.*, No. 03-cv-3993-JFK, 2004 U.S. Dist. LEXIS
    15477 (S.D.N.Y. Aug. 6, 2004) ......................................................................................10, 11

*Intria Corp. v. Intira Corp.*, No. 00-cv-7198-AGS, 2000 U.S. Dist. LEXIS 17039
    (S.D.N.Y. Nov. 27, 2000) ....................................................................................4, 7, 9, 12, 13, 14

*Kendall U.S.A., Inc. v. Central Printing Co.*, 666 F. Supp. 1264 (N.D. Ind. 1987) ..................7, 14

*Liberty Mutual Fire Insurance v. Costco Wholesale Corp.*, No. 06-cv-5226-PKL, 2007
    U.S. Dist. LEXIS 63435 (S.D.N.Y. Aug. 27, 2007) .........................................................7, 14

*Quan v. Computer Science Corp.*, No. 06-cv-3927-CBA, 2008 U.S. Dist. LEXIS 1360
    (E.D.N.Y. Jan. 8, 2008) .........................................................................................................8

*Reinhard v. Dow Chem. Co.,* No. 07-cv-3641, 2007 U.S. Dist. LEXIS 59242 (S.D.N.Y. Aug. 13, 2007) ..............................................................................................................6

*WellQuest International, Inc. v. Genesis Intermedia.com, Inc.*, No. 00-cv-6558-RCC, 2001 U.S. Dist. LEXIS 16757 (S.D.N.Y. Oct. 17, 2001) ...................................................11

*ZPC 2000, Inc. v. The SCA Group, Inc.*, 86 F. Supp. 2d 274 (S.D.N.Y. 2000).........................9, 10

**FEDERAL STATUTES**

28 U.S.C. § 1391(c) ........................................................................................................................5

28 U.S.C. § 1404(a) ...........................................................................................................1, 4, 5, 14

**EXHIBITS**

Declaration of Kevin Brase................................................................................................... Tab A

Declaration of Chris Wilson .................................................................................................Tab B

Defendants Radica Enterprises Inc.[1] and Radica Games Limited (collectively "Radica") respectfully move for this Court to transfer the above-captioned matter to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a).  Plaintiff Infinite Machines, LLC ("IM") filed this suit against Radica alleging breach of a non-disclosure agreement, misappropriation of property, and unfair competition.  Underlying these claims are IM's allegations that it disclosed confidential information to Radica and that this allegedly-confidential information was improperly incorporated into a product—U.B. Funkeys™—that Radica sells throughout the United States and abroad.  While Radica disputes IM's claims, the underlying allegations bear little to no relation to New York and this District.  Fairness, convenience, and judicial economy would be better served by transferring this matter to the Northern District of Texas.

IM's claims implicate events that occurred and witnesses that are located primarily in the Northern District of Texas.  Radica is headquartered in the Northern District of Texas, its United States product development team is located in Texas, its marketing team is located in Texas, and most if not all of Radica's witnesses will be located in Texas.  IM and its founder, John Boucard, are located in California.  The contract at issue was negotiated and executed by the parties in Texas and California, communication and alleged collaboration between the parties took place primarily between Texas and California, and the Radica and IM employees or ex-employees involved in any such communications are located in Texas and California.  Neither party has offices or relevant employees in New York.[2]  Because there is little if any connection between

---

[1] Radica Enterprises Inc. has been misidentified as Radica Enterprises Ltd.

[2] There is one Radica sales employee who was not involved in the Bitty Bytes project or Boucard's alleged disclosure of his "Footnotes" idea that resides in the state of New York.  Radica has no other employees in the state of New York.

the parties and the events underlying IM's claims and the state of New York, Radica respectfully requests that the Court transfer this case to the Northern District of Texas for the convenience of the parties and witnesses.

## I.    FACTUAL BACKGROUND

Radica is a leading manufacturer of interactive, handheld electronic games that is based in Addison, Texas.[3]  For the past 24 years, Radica has designed dozens of innovative games and toys.  In the summer of 2005, Radica employees in Texas conceived of a new toy concept that was internally dubbed Bitty Bytes.[4]  Radica's product development team immediately began working with its design engineers based in China to refine the Bitty Bytes concept, analyze anticipated component and product costs, and develop alternative designs.[5]

It was not until September, 2005, that Chris Wilson, vice president of marketing for Radica in Texas, contacted John Boucard, IM's president and founder, in California to inquire as to Boucard's interest in writing some software for a new toy concept that Radica was developing.[6]  Before Radica would disclose Bitty Bytes to Boucard it required that Boucard sign and return a non-disclosure agreement.[7]  This non-disclosure agreement, which is the subject of

---

[3] Radica Enterprises, Inc. is a Nevada corporation with a principal place of business in Addison, Texas. Radica Games Limited is a company organized under the laws of Bermuda.  Addison is a suburb north of Dallas, Texas and located in the Northern District of Texas, Dallas Division.

[4] Declaration of Kevin Brase in Support of Defendants' Motion to Transfer ("Brase Decl.") at ¶ 5, attached hereto as Exhibit A ("Ex. A").

[5] Brase Decl. at ¶ 5 (Ex. A).

[6] Declaration of Chris Wilson in Support of Defendants' Motion to Transfer ("Wilson Decl.") at ¶ 4, attached hereto as Exhibit B ("Ex. B").

[7] Wilson Decl. at ¶ 5 (Ex. B).

IM's claims in the present suit, was transmitted by Radica in Texas to Boucard in California.[8] Boucard executed the agreement on behalf of IM in California and transmitted it back to Texas.[9]

After the non-disclosure agreement was executed, almost all communication between the parties took place between Texas and California. Radica disclosed aspects of its Bitty Bytes concept to Boucard by transmitting from Texas an email and presentation to Boucard in California.[10] Boucard then proposed that Radica implement an idea that he had allegedly developed and referred to as "Footnotes" in Radica's Bitty Bytes product, transmitting this proposal from California to Texas.[11] From September 2005 through January 2006, Radica and IM exchanged a series of emails, had conference calls, and transmitted presentations between Texas and California concerning the Bitty Bytes concept, Boucard's alleged Footnotes idea, and Boucard's attempts to license Footnotes to Radica.[12] These communications generally occurred between Texas and California.

In fact, during the course of these discussions, only a single meeting between the parties occurred in New York.[13] Because several Radica employees were to attend a toy fair in New York in October 2005, the parties scheduled a meeting at which Boucard presented information prepared by both parties regarding Bitty Bytes and Footnotes. The information disclosed at this one meeting was not in any way restricted to the meeting in New York. Boucard gave the same

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at ¶ 6 (Ex. B).

[11] *See* Complaint at ¶ 14.

[12] Wilson Decl. at ¶ 7 (Ex. B); *see* Complaint at ¶ 17.

[13] *Id.* at ¶ 8.

presentation to Radica's CEO in California,[14] and it contained material that the parties had discussed and communicated between Texas and California.

Negotiations between the parties ceased in early 2006 after the parties were unable to reach an agreement regarding Boucard's attempts to license his alleged Footnotes idea. Radica then developed the Bitty Bytes concept, which was commercially released as "U.B. Funkeys," using an architecture that was developed prior to Boucard's disclosure of his alleged Footnotes idea for Bitty Bytes.[15]

In the present suit, IM alleges that U.B. Funkeys incorporates confidential information of IM in violation of the non-disclosure agreement between the parties. The apparent harm complained of—Radica's disclosure or sale of U.B. Funkeys—is in no way limited to New York. Radica has disclosed, offered for sale and sold U.B. Funkeys throughout the United States and abroad.

## II.    ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To obtain transfer under section 1404(a), Radica "must establish (1) that the action could have been brought in the proposed transferee forum and (2) the transfer promotes convenience and justice." *Bassali v. Johnson Controls, Inc.,* No. 06-cv-4149-KMW, 2007 U.S. Dist. LEXIS 95143, at *2 (S.D.N.Y. Dec. 20, 2007) (Wood, J.) (internal quotations omitted). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *Frame v. Whole*

---

[14] *See* Complaint at ¶ 21.

[15] Brase Decl. at ¶ 6 (Ex. A).

*Foods Market, Inc.,* No. 06-cv-7058-DAB, 2007 U.S. Dist. LEXIS 72720, at *9 (S.D.N.Y Sept. 24, 2007) (Batts, J.) (quoting *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992)).

      A.      **The Northern District of Texas Is a Proper Venue for this Action.**

The threshold question under §1404(a) is whether an action could have been brought in the district to which transfer is sought. *Intria Corp. v. Intira Corp.*, No. 00-cv-7198-AGS, 2000 U.S. Dist. LEXIS 17039, at *6 (S.D.N.Y. Nov. 27, 2000) ("Court's initial inquiry is whether the action 'might have been brought' in the proposed transferee forum"). An action "might have been brought" in the transferee forum if that forum would have had personal jurisdiction over the defendant at the time action was commenced and if venue properly lies there. *Id*.

This action could have been brought in the transferee forum, the Northern District of Texas. Diversity jurisdiction exists in Texas because IM is a California corporation, Radica Enterprises, Inc. is a Nevada corporation and Radica Games Limited is organized under the laws of Bermuda. Personal jurisdiction over Radica is proper in the Northern District of Texas because Radica's principal place of business is in Addison, Texas, and Radica transacts business within the Northern District of Texas. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(c) (a defendant corporation resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.). Radica has thus met the threshold requirement for transfer under §1404(a).

      B.      **The Relevant Factors Strongly Favor Transfer of this Action to the Northern District of Texas.**

Once the threshold jurisdictional requirement has been met, several factors are weighed to determine whether a transfer is appropriate. *Frame,* 2007 U.S. Dist. LEXIS 72720, at *11. Relevant factors in evaluating a motion to transfer under § 1404(a) include: (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease

of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *See Id.* In the present case, each of these factors either favors a transfer or is neutral.

        1.    *The Northern District Is More Convenient for the Witnesses*

The convenience of witnesses has been called the "single-most important factor in the analysis of whether transfer should be granted.'" *Reinhard v. Dow Chem. Co.,* 07 Civ. 3641 (RPP), 2007 U.S. Dist. LEXIS 59242, at* 11-12 (S.D.N.Y. Aug. 13, 2007). Here, the most likely material witnesses in this action are Radica and IM employees. Radica personnel may be called to testify on issues including, for example, (1) Radica's conception and reduction to practice of the Bitty Bytes concept; (2) communication regarding the non-disclosure agreement at issue and Radica's adherence to the terms of this agreement; (3) Radica's disclosure of the Bitty Bytes concept to Boucard; (4) Boucard's disclosure of his alleged Footnotes idea and his attempts to license such idea to Radica; and (5) development of U.B. Funkeys after negotiations with Boucard ceased. Individuals with personal knowledge of the above subjects may include:

- **Kevin Brase**, Vice-President of Product Development for Radica, Addison, Texas: Conceived of original Bitty Bytes concept, communicated with Boucard regarding his alleged Footnotes idea, and assisted with product development of U.B. Funkeys. Has personal knowledge of at least (1), (2), (4), and (5) above.
- **Chris Wilson**, Vice-President of Marketing for Radica, Addison, Texas: Initiated communication with Boucard and participated in communications regarding Bitty Bytes and Footnotes between Radica and IM. Has personal knowledge of all topics 1-5 above.
- **Ethan Wood**, Project Industrial Designer for Radica, Addison, Texas: Conceived of original Bitty Bytes concept and assisted with product development. Has personal knowledge of at least (1) and (5) above.
- **Jeff Bruneau**, Marketing Manager for Radica, Addison, Texas: Participated in discussions with Boucard regarding Bitty Bytes and Footnotes concepts. Has personal knowledge of at least (3), (4) and (5) above.

- **Patti Saitow**, Flower Mound, Texas[16]: Was Vice-President of Global Marketing Services for Radica and participated in negotiations with Boucard regarding Boucard's attempts to license his Footnotes idea. Has personal knowledge of at least (4) above.
- **Pat Feely**, Pasadena, California: Pat Feely was the CEO of Radica and participated in communications with Boucard regarding Bitty Bytes and Footnotes. Has personal knowledge of at least (4) above.

These are only some of the Radica employees that have personal knowledge of at least one of the above-listed topics.[17] Ms. Saitow and Mr. Feely are former employees of Radica, and as non-party witnesses, their convenience is especially important. *Liberty Mutual Fire Ins. v. Costco Wholesale Corp.*, No. 06-cv-5226-PKL, 2007 U.S. Dist. LEXIS 63435, at *7 (S.D.N.Y. Aug. 27, 2007). As to IM, Boucard is the only employee of which Radica is presently aware, and Boucard, like IM, resides in California. Importantly, none of the above-identified witnesses are located in New York.[18]

In determining whether this factor weighs in favor of transfer, the Court "must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, No. 05-cv-4741-DC, 2005 U.S. Dist. LEXIS 32841, at *10 (S.D.N.Y. Dec. 12, 2005). The above-identified fact witnesses may proffer testimony bearing directly on the substance of IM's complaint. Each of the potential witnesses listed has unique experiences with IM or development of the Bitty-Bytes / U.B. Funkeys concepts, and may provide important, non-cumulative evidence in this case.

---

[16] Flower Mound is a suburb approximately 25 miles northwest of Dallas, Texas.

[17] Any other Radica employees that may have personal knowledge of any of the above-listed topics are located in either Texas or China; none are located in New York. *See* Initial Disclosures of IM attached hereto as Exhibit C.

[18] Although IM has identified Arkadium Games, a New York-based software developer, in its initial disclosures as a party with potentially-relevant information, Arkadium Games was only hired to develop artwork and software in accordance with the U.B. Funkeys product specification that was provided by Radica. Brase Decl. at 7 (Ex. A). Arkadium Games had no role in developing the U.B. Funkeys product specification or physical product architecture that is the subject of the present dispute. *See id.*

As such, the fact that almost all of these witnesses reside in the Northern District of Texas weighs heavily in favor of transferring the case. *See Intria Corp.*, U.S. Dist. LEXIS 17039, at *8-9 (defendant's identification of its CEO, marketing vice president and director of marketing communications sufficient showing of inconvenience to warrant transfer).

These potential witnesses will be severely inconvenienced if forced to travel to this district for depositions or to provide trial testimony. Moreover, the extended travel obligations these employees would likely incur should the case remain in this district through trial may cause serious harm to Radica's business. Radica has fewer than 60 employees,[19] and the above-listed individuals include high-ranking, essential employees such as Radica's Vice-President of Marketing and Vice-President of Product Development. Because these individuals are essential to the day-to-day operations of Defendants, "travel to New York presents a potential for significant harm to that business." *Canadian Kennel Club v. Continental Kennel Club,* No. 96-cv-6735-LMM, 1997 U.S. Dist. LEXIS 9159, at *10 (S.D.N.Y. June 23, 1997) (weighing this factor in favor of transfer when two of the witnesses were "essential employees" of the defendant).

          2.    *The Northern District Is More Convenient for the Parties*

The parties are all incorporated and headquartered far from this district. IM is incorporated and headquartered in California. Radica's principal place of business is in the Northern District of Texas. No party to this action has a principal place of business or an office in the state of New York. Further, except for one sales employee who was not involved in the Bitty Bytes project or Boucard's alleged disclosure of his "Footnotes" idea, there is not a single employee for either party that resides in the state of New York. This is important because

---

[19] Brase Decl. at ¶ 8 (Ex. A).

"[r]esidence is the touchstone for party convenience." *Quan v. Computer Sci. Corp.,* No. 06-cv-3927-CBA, 2008 U.S. Dist. LEXIS 1360, at *16 (E.D.N.Y. Jan. 8, 2008).

The Northern District of Texas would be a far more convenient forum for Radica as the vast majority of its employees, its witnesses, and most if not all of its relevant documents are located in that district. For these same reasons, retention of this action in New York would substantially increase Radica's burden in defending against IM's claims. Furthermore, Radica's business will be disrupted if it is required to make key personnel and officers available for an extended period of time in New York.[20] As the court noted in *Kendall U.S.A., Inc. v. Central Printing Co.*, "Disruption of business, as a part of inconvenience to the parties, is a valid concern when considering transfer." 666 F. Supp. 1264, 1268 (N.D. Ind. 1987).

On balance, transfer would be significantly more convenient for Radica, and not significantly less convenient for IM. In such a situation, transfer is appropriate. *See Intria*, 2000 U.S. Dist. LEXIS 17039, at *16 (where both parties would be inconvenienced by the maintenance of the action in New York and transfer would relieve the inconvenience on the defendant, factor weighs in favor of transfer); *ZPC 2000, Inc. v. The SCA Group, Inc.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) ("Since none of the parties reside in New York, it is only logical that a transfer to the residence of one of them would be more convenient.").

        3.    ***The Relevant Documents and Other Sources of Proof Are Located in the Northern District of Texas***

Radica's potentially relevant documents are located in Addison, Texas. Specifically, Radica's contracts with and proposed contracts with IM, documentation regarding communications with IM, product development documents, sales and marketing documents,

---

[20] Brase Decl. at ¶ 9 (Ex. A).

financial documents, and other related documents are located at its principal place of business. IM, like Radica, does not have a significant presence in this district. Consequently, access to IM's documents and similar sources of proof is not aided by maintaining suit in this court. This Court has found that this factor weighed in favor of transfer because the defendant's "business records pertaining to the design, manufacture, and sale of its products are located" in the defendant's home district. *Coloplast A/S v. Amoena Corp.*, 25 U.S.P.Q.2d 1549, 1551 (S.D.N.Y. 1992). Thus, this factor also weighs in favor of transfer.

        4.    ***The Locus of Operative Facts Is in the Northern District of Texas***

The "location of operative events is a 'primary factor' in determining a motion to transfer venue." *ZPC 2000*, 86 F. Supp 2d. at 279. Almost all contract negotiations, email communications, telephone communications, and meetings between the parties occurred as exchanges between or within Texas and California. In fact, the one meeting held in New York during Radica's participation in the New York toy fair is not a strong reason to hold this case in this Court, because "the location of a trade show is generally fortuitous." *Artemide SpA v. Grandlite Design & Mfg. Co.,* 672 F. Supp. 698, 704 (S.D.N.Y. 1987). Indeed, the only reason the parties met in New York was that several Radica employees happened to be in town for the toy fair. As the parties disclosed and discussed the same type of information on other occasions between or within Texas and California, this single meeting is an extremely weak tie to the forum. An examination of IM's three specific claims reveals that the operative facts in this case occurred in districts other than the Southern District of New York.

For breach of contract, a court will look to the place of negotiation, formation, performance and breach. *I Create Int'l, Inc. v. Mattel, Inc.*, No. 03-cv-3993-JFK, 2004 U.S. Dist. LEXIS 15477, at *9 (S.D.N.Y. Aug. 6, 2004). The non-disclosure agreement at the heart of this dispute was negotiated via email and telephone between the parties in Texas and California. IM

executed the non-disclosure agreement in California, and Radica executed the agreement in Texas. This contract required the parties to refrain from disclosing confidential information, and as such, contract performance was not tied to any particular location. The alleged breach occurred when Radica purportedly disclosed IM's information. Radica's operations are based in Addison, Texas and thus, it is likely than any use or disclosure of allegedly-confidential information that IM would point to as a purported breach would have occurred at or originated from Radica's Texas facilities. Thus, as to IM's contract claim, this factor favors transfer to the Northern District of Texas.

Similarly, a claim for misappropriation centers on the existence of an unauthorized disclosure. *WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*, No. 00 -cv-6558-RCC, 2001 U.S. Dist. LEXIS 16757, at *14 (S.D.N.Y. Oct. 17, 2001). As with IM's contract claim, any communication that IM would seek to use in support of its misappropriation claim is likely to have originated in Texas. Therefore, as to IM's misappropriation claim, this factor also favors transfer to the Northern District of Texas.

Finally, the locus of operative facts for an unfair competition claim "is in the initial forum if the acts of infringement, dilution, or unfair competition occur in that forum," but this factor only "weakly favors" retaining a case when no other important events occurred in the forum. *I Create Int'l, Inc.,* 2004 U.S. Dist. LEXIS 15477, at *10. IM incorrectly believes that its technology is somehow incorporated into Radica's U.B. Funkeys. This product is available throughout the United States and abroad, thus sales and marketing activities are no more targeted at New York than anywhere else in the United States. Decisions regarding sales and marketing of U.B. Funkeys are made in Radica's Addison, Texas office. Thus, this factor is either neutral or favors transfer of IM's unfair competition claim.

5.    *The Subpoena Power of this Court Would Be Useful in Texas Where a Non-Party Witness Is Located.*

Current and former Radica employees that might be called to testify reside in Texas with one former Radica employee residing in California. They would no doubt be more willing to testify in their home state than in New York, and former employees such as Ms. Saitow and Mr. Feely would be subject to process to compel their attendance. *See Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 -cv-740-WHP, 1999 U.S. Dist. LEXIS 8031, at *14-15 (S.D.N.Y. May 25, 1999) (granting transfer to the district where the Defendant's former employees resided, and noting that they would be more willing to testify there than in New York, where the court could not compel them to appear). This factor favors transfer.

6.    *The Relative Means of the Parties, Two Corporate Entities, Has Little Impact on the Transfer Analysis*

In an action between two corporate entities, the relative means of the parties may be assumed to be of little weight. *Bionx Implants*, 1999 U.S. Dist. LEXIS 8031, at *15 (explaining that "this factor is not entitled to great weight when both parties are corporations"); *Intria*, 2000 U.S. Dist. LEXIS 17039, at *24-25; *1-800 Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F. Supp. 128, 136 (S.D.N.Y. 1994)). Consequently, this factor is neutral in the present case.

7.    *Familiarity with the Law Has Little Impact on this Case.*

At this point, it is unclear what law would be applied to these claims. IM's complaint attempts to plead causes of action under New York common law. With respect to IM's breach of contract claim, however, the operative agreement between the parties specified that the law of the British Virgin Islands shall govern. Moreover, with respect to IM's misappropriation of property and unfair competition claims, to the extent that New York law differs from Texas law, the Court would be required to "apply an 'interests analysis' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley v. AMR Corp.*, 153

F.3d 5, 12 (2d Cir. 1998). "'In deciding which state has the prevailing interest, we look only to those facts or contacts that relate to the purpose of the particular laws in conflict. 'Under this formulation, the significant contacts are, almost exclusively, the parties domiciles and the locus of the tort.'" *Id.* (quoting *AroChem Int'l., Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). Because the parties are domiciled outside New York and the locus of IM's alleged harm is primarily if not entirely outside New York, it is unlikely that New York law would apply in the event of a conflict of laws.

In sum, any court overseeing this matter would have to undertake its own analysis as to which law should apply. Even if the presiding court decides that New York law is to be applied, this factor is given little weight in federal court because it is presumed that federal courts will be able to apply the law of foreign jurisdictions, especially when the questions of law are not complex. *Bassali,* 2007 U.S. Dist. LEXIS 95143, at *16. Thus, this factor is neutral in the transfer analysis.

        8.     ***IM's Choice of the Southern District of New York Is Entitled to Little Weight***

IM's selection of a forum minimally connected with itself, Radica, or any aspect of the litigation is entitled to little weight. *See Coker v. Bank of Am.*, 984 F. Supp. 757, 766-67 (S.D.N.Y. 1997); *1-800-Flowers*, 860 F. Supp. at 135 ("The weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose."); *Intria*, 2000 U.S. Dist. LEXIS 17039, at *30-31 (same); *Harrison v. Samuel*, No. 05-cv-8914-SAS, 2006 U.S. Dist. LEXIS 41856 (S.D.N.Y. June 19, 2006) (reducing the significance of the plaintiff's forum choice where the only connection was a meeting between plaintiff and defendant in New York). As discussed above, the operative facts occurred in other districts and the parties reside in other

districts.  "Where, as here, the chosen forum is not the plaintiff's residence, the defendant's place of residence becomes more important in determining convenience to the parties."  *Kendall*, 666 F. Supp. at 1268.  Thus, IM's choice of forum in this case does not weigh against transfer.

        9.     ***Judicial Economy and the Interests of Justice Weigh in Favor of Transfer.***

This suit between businesses located in California and Texas has little connection to New York.  It concerns purported intellectual property conceived in locations other than New York.  The products at issue are sold around the world and have no particular tie to New York.  As such, "[t]his is not a 'localized controversy,' that New York has an interest in trying."  *Liberty Mutual Fire Ins. v. Costco Wholesale Corp.*, No. 06-cv-5226-PKL, 2007 U.S. Dist. LEXIS 63435, at *16 (S.D.N.Y. Aug. 27, 2007).  Further, Radica's witnesses and documents related to the conception, design, development, manufacture, sales and marketing of the products at issue are located in Texas, and thus, transfer of this action to the Northern District of Texas would facilitate discovery.  As the locus of operative facts is in Texas and New York's interest in this action is minimal, the interests of justice as measured by trial efficiency also weigh in favor of transfer.  *Intria,* 2000 U.S. Dist. LEXIS 17039, at *31-32 (finding that this factor weighed in favor of transfer because California had greater interest than New York in the outcome of the case).

### III.    CONCLUSION

The factors relevant to determining if transfer is appropriate under § 1404(a) dictate that this case be transferred to the Northern District of Texas.  Accordingly, Radica requests that this court grant its motion and transfer this action to the Northern District of Texas.

                    Respectfully submitted,

                    KENYON & KENYON LLP

                    Attorneys for Defendants


                    By:    s/ Charles A. Weiss
                           CHARLES A. WEISS
                           JOHN R. HUTCHINS

DATED:  February 15, 2008
            New York, New York


<u>Of counsel</u>:

Hilda C. Galvan
Mark C. Howland
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
(214) 220-3939